UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
                                                :
BEATRICE A. OLUOCH,                             :
                                                :
                          Plaintiff,            :
                                                :       14-CV-00421 (TPG)
           – against –                          :
                                                :       **OPINION**
STELLA KERUBO ORINA,                            :
                                                :
                          Defendant.            :
                                                :
------------------------------------------------x

Plaintiff Beatrice A. Oluoch claims that former Kenyan diplomat, defendant Stella Kerubo Orina, violated federal human trafficking law and state labor law by forcing her to work around-the-clock as a domestic servant for the meager salary of $150 per month. Defendant moves to dismiss six of the eight claims as time-barred. For the following reasons, defendant's motion to dismiss is denied with regard to plaintiff's federal law claims, but granted with regard to plaintiff's state law claims.

The Complaint

In 2004, defendant hired plaintiff as a domestic servant in her home in Kenya. Comp. ¶ 7. Defendant gave birth to two children, and plaintiff shifted from housekeeper to nanny. Compl. ¶ 7. In 2006, defendant accepted employment in the United States as a diplomat for the Kenyan Mission to the United Nations. Compl. ¶ 1. Defendant asked plaintiff to accompany her and her family to the United States as a nanny. Compl. ¶ 9. To work in the United States, plaintiff applied for an

A-3 visa, which is a nonimmigrant diplomatic visa granted to the servants of foreign government representatives. Compl. ¶ 31. To obtain an A-3 visa for plaintiff, defendant certified that plaintiff would receive a fair wage in the United States. Compl. ¶ 9.

Defendant kept two residences between 2006 and 2007. Plaintiff worked at the first residence, in Bethesda Maryland, from July 10, 2006 until May 31, 2007. Compl. ¶ 12. The parties signed a contract providing that plaintiff would be compensated $8.00 per hour, overtime wages, and room and board. Compl. ¶ 9, 12. Plaintiff worked at the second residence, in Fresh Meadows, New York, from May 31, 2007 until September 4, 2007. Compl. ¶ 12. For her work at the second residence, the parties agreed that plaintiff would be compensated $9.96 per hour, overtime wages, and room and board. Compl. ¶ 10.

Despite her understanding that she had been hired as a nanny to plaintiff's children, plaintiff was required to perform all the household duties. Compl. ¶ 13. Plaintiff worked approximately 13 hours per day, seven days a week. Compl. ¶ 13. She also remained "on call" each night when the children awoke. Compl. ¶ 14. Notwithstanding the many hours worked, defendant only paid plaintiff $150 per month. Compl. ¶ 14. Defendant often paid plaintiff only $50 per month, sending the remaining $100 to plaintiff's family in Kenya. Compl. ¶ 14.

Soon after plaintiff's arrival in the United States, defendant confiscated her passport and refused to allow her to leave the house

unescorted or make unsupervised phone calls. Compl. ¶¶ 16–17. However, in August of 2007 defendant gave plaintiff her passport to allow her to accompany defendant's children in visiting their grandmother in Minnesota. Compl. ¶ 20. At this time, plaintiff discovered that her A-3 visa had been cancelled. Compl. ¶ 20. Upon returning to New York, defendant demanded that plaintiff turn over her passport. Compl. ¶ 21. Plaintiff refused. Compl.¶ 21. From then on, defendant conducted frequent searches of plaintiff's room and threatened to kill plaintiff. Compl. ¶ 21. On September 4, 2007, plaintiff escaped from defendant's home "wearing slippers and carrying nothing but her passport and the little money that she had in her possession." Compl. ¶ 23.

In September of 2011, plaintiff was arrested in Maryland while working as a babysitter for a different family. Compl. ¶ 25. Plaintiff discovered that her A-3 visa had actually been cancelled at defendant's behest years earlier. See Compl. ¶ 25. As a result, plaintiff was forced to serve a lengthy probation period. Compl. ¶ 26. In 2011, plaintiff obtained a "T visa," which is a visa for victims of human trafficking. Compl. ¶ 27.

In 2010, plaintiff sued defendant in the Southern District of Maryland. However, that case was dismissed for failure to effectuate service on defendant.[1] Similarly, plaintiff brought an action in this court in 2011, but the undersigned dismissed that case for insufficient service

---

[1] Although these prior lawsuits are not described in the complaint, they are matters of which the court takes judicial notice. Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)

of process. Opinion of Aug. 8, 2012, No. 11-CV-3117(TPG) (S.D.N.Y. 2012).

Plaintiff filed the instant action on January 23, 2014 asserting eight claims against defendant. The first four claims arise under the federal Trafficking Victims Protection Act of 2000, and assert: (1) involuntary servitude; (2) forced labor; (3) trafficking with respect to peonage, slavery, involuntary servitude, or forced labor; and (4) unlawful conduct with respect to documents in further of trafficking. Compl. ¶¶ 35–59. The remaining four claims arise under New York law and assert: (5) failure to pay the minimum wage and overtime wage; (6) breach of contract; (7) fraud; and (8) unjust enrichment. Compl. ¶¶ 60–91. Defendant moves to dismiss as time-barred counts one, four, five, six, seven, and eight.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Rather, the complaint must "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In deciding the motion, the court accepts as true all well-

pleaded allegations contained in the complaint and draws all reasonable inferences in favor of the plaintiff. See Twombly, 550 U.S. at 555-56. However, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## A. Whether Plaintiff's Federal Law Claims Are Time-Barred.

At issue in this case is whether plaintiff's federal law claims, which accrued in 2007, are governed by the then-applicable four-year statute of limitations or the expanded ten-year statute of limitations enacted in 2008.

In 2000, Congress enacted the Trafficking Victim's Protection Act ("TVPA") to combat the growth of the international sex trade and involuntary servitude, crimes which disproportionately affect women and children. *See* Purposes and Findings, Victims of Trafficking and Violence Protection Act Of 2000, P.L. 106–386, October 28, 2000, 114 Stat 1464. Congress made it a federal crime to traffic and hold a person in involuntary servitude. See 18 U.S.C. §§ 1584–93. Moreover, in 2003 Congress created a civil cause of action allowing victims of human trafficking to recover damages from their captors in district court. Trafficking Victims Protection Reauthorization Act ("TVPRA") of 2003 §4(a)(4)(A), PL 108–193, December 19, 2003, 117 Stat 2875.

When first enacted, the TVPRA did not contain a statute of limitations. See id. Thus, claims brought under the TVPRA were subject

to the default four-year statute of limitations applying to civil causes of action created by Congress. 28 U.S.C. § 1658. However, in 2008, Congress amended the TVPRA to include a ten year statute of limitations. Cruz v. Maypa, No. 13-2363, 2014 WL 6734848, at *3 (4th Cir. Dec. 1, 2014) (citing the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008). The issue in this case is whether plaintiff, whose claims accrued in 2007, may invoke the new ten-year statute of limitations.

In *Landgraf v. USI Film Products*, the Supreme Court emphasized that, in light of "elementary considerations of fairness," American courts recognize a presumption against the retroactive application of legislation. 511 U.S. 244, 265 (1994). The Court repeated Justice Scalia's observation that "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place." Id. (quoting Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)). However, the Court acknowledged that it is not always simple to determine when a statute that impacts prior conduct is, in fact, impermissibly "retrospective." See id. at 269. It noted that "a statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in proper law." Id. at 269–70. Thus, when confronted with the application of a federal statute to prior events, a

district court must carefully assess whether applying the statute would, in fact, be impermissibly "retrospective." See id. at 279–80.

To this end, the *Landgraf* Court announced a three-part analysis for determining the propriety of applying a federal statute to events occurring before a lawsuit. Id. at 280. First, the court must "determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules." Id. Second, "if the statute contains no such express command, the court must determine whether [it] would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. Third, "if the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." Id.

The Second Circuit has not determined whether the expanded statute of limitations provided by the Trafficking Victims Protection Reauthorization Act applies to claims accruing before 2008. However, the Fourth Circuit recently addressed this question in *Cruz v. Maypa*. No. 13-2363, 2014 WL 6734848, at *4 (4th Cir. Dec. 1, 2014). The plaintiff, a domestic servant, had been held in involuntary servitude by her "employers" for nearly six years before she escaped in January of 2008. Id. at *2. Unfortunately, she did not bring a suit under the TVPRA until

July of 2013, five years later. Id. The defendants argued that Cruz's claims were time-barred. Id. The district court agreed, and dismissed the plaintiff's claims in their entirety. Id.

On appeal, the Fourth Circuit applied the *Landgraf* analysis to assess whether the TVPRA did, on the facts before it, actually have an impermissible retrospective effect. Id. at \*4. The Court moved quickly past the first *Landgraf* prong, noting that "Congress has not expressly limited the [TVPRA's] scope." Id. It then applied the second *Landgraf* prong, and asked whether the TVPRA's new 10 year statute of limitations, if applied against the defendants, would produce new legal consequences for them. Id. At this point, the Fourth Circuit recognized an important distinction in the plaintiff's favor. Since the plaintiff's claims accrued in 2008, they were still "alive when the new limitations period was enacted" later that year. Id. Thus, even though the plaintiff's suit was filed more than four years after her claims accrued, dismissal was inappropriate since allowing the longer limitations period imposed no new legal consequences on defendants. Id.

In applying the *Landgraf* analysis to the instant case, the relevant inquiry is whether allowing plaintiff's claims to go forward at this late date would increase defendant's liability for past conduct—in essence, whether allowing the plaintiff's claims to go forward would subject defendant to retrospective treatment. See Landgraf, 511 U.S. at 280. Just as in the Fourth Circuit, courts in this district recognize that Congress's

adoption of a new, longer statute of limitations does *not* impair a defendant's rights if the effect is merely to extend claims that were still viable at the time of adoption. Goodman v. City of New York, No. 10 CIV. 5236 RJS, 2011 WL 4469513, at *6 (S.D.N.Y. Sept. 26, 2011).

Plaintiff claims to have been held by defendant in involuntary servitude from 2006 until September 4, 2007 when she escaped from defendant's home. Compl. ¶ 23. Thus, her claims accrued in 2007. In 2007, defendant could not expect to face liability for her conduct beyond 2011, when the four-year statute of limitations period expired. However, plaintiff's claims were still valid, still "alive," a year later when Congress expanded the statute of limitations for human trafficking claims to ten years. Holding defendant to this increased limitations period risks no retrospective effect because it does nothing to expand the legal consequences defendant already faced in 2008. Since the claims were still alive in 2008, there is no impermissible retroactivity in applying the extended statute of limitations Congress adopted that year.

Defendant's motion to dismiss is denied with regard to plaintiff's federal law claims.

### B. Whether Plaintiff's State Law Claims Qualify for Equitable Tolling.

In addition to her federal law claims, plaintiff also asserts claims arising under New York Labor Law and the common law. As the parties acknowledge, plaintiff's claims under New York Labor law are subject to

a six-year statute of limitations. N.Y. Lab. Law § 198(3). Likewise, plaintiff's claims for breach of contract, fraud, and unjust enrichment are also subject to a six-year statute of limitations. N.Y. C.P.L.R. 213. Plaintiff filed the instant action on January 23, 2014, more than six years after the latest date her state-law claims could have accrued, September 4, 2007. Compl. ¶ 23. Thus, plaintiff's state law claims are time-barred unless equitable tolling applies.

Equitable tolling permits courts to extend the statute of limitations to avoid inequitable circumstances. Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir. 1990). Under New York law, equitable tolling "'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quoting Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 794 (N.Y.App.Div.2005)). A plaintiff's due diligence is an essential element for obtaining equitable relief, requiring the plaintiff to show that the action was brought within a reasonable time after facts justifying tolling have ceased operating. Id. However, the diligence requirement will be relaxed if a plaintiff can show some extraordinary circumstance that "stood in his way" to prevent timely filing. Harper v. Ercole, 648 F.3d 132, 136 (2d Cir. 2011).

Plaintiff argues that the statute of limitations period for her state law claims should be equitably tolled because defendant was immune

from suit while employed as a foreign diplomat. Article 31 of the Vienna Convention on Diplomatic Relations ("VCDR"), which the United States has ratified, extends immunity from civil actions to foreign diplomatic agents. See VCDR art. 31, 23 U.S.T. 3227; see also 22 U.S.C. § 254d ("Any action or proceeding brought against an individual who is entitled to immunity . . . under the Vienna Convention on Diplomatic Relations . . . shall be dismissed."). This immunity expires once a defendant's diplomatic "functions . . . have come to an end." VCDR art. 39(2). Thus, plaintiff argues that the limitations period should be tolled until September of 2010, the date when defendant's term as a Kenyan diplomat ended. Pls. Mem. L. Opp. Mot. Dismiss at 13.[2]

Plaintiff raises an interesting legal argument, but she has not shown that she was diligent in pursuing her state law claims against defendant. The court takes judicial notice of the fact that plaintiff asserted state law claims against defendant in 2010 and 2011 in the District of Maryland and the Southern District of New York. See Complaint, 10-CV-1098 (D.Md.) Complaint, 11-CV-3117 (S.D.N.Y.). However, in both of those cases plaintiff failed to serve defendant with a copy of the summons and complaint. Indeed, the undersigned dismissed

---

[2] The court notes that the VCDR makes an exception to diplomatic immunity for "action[s] relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions" and that this alone could be read to render plaintiff's immunity argument meritless. See VCDR art. 31(c). However, the Second Circuit has not yet determined whether the hiring of a domestic servant qualifies for this exception from suit. The Court touched on the question in *Swarna v. Al-Awadi*, 622 F.3d 123, 138 (2d Cir. 2010), but it was not relevant to the appeal and thus not answered.

plaintiff's 2011 case for insufficient service of process. Opinion of Aug. 8, 2012, No. 11-CV-3117(TPG) (S.D.N.Y. 2012).

While the court is sympathetic to the fact that it is often difficult to serve foreign defendants, there are a number of mechanisms for doing so including the use of return-receipt mail or by requesting the issuance of letters rogatory. See Fed. R. Civ. P. 4(f)(2) (Service in a Foreign Country). Here, plaintiff faced no extraordinary circumstances, such as hospitalization, that prevented her from exercising these options sooner. Cf. Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011). Even if the court were to accept that defendant was immune from suit until 2010, this still gave plaintiff three years to assert her state law claims before they expired. She did not do so. Thus, equitable tolling of plaintiff's state law claims is not warranted and defendant's motion to dismiss is granted with regard to plaintiff's state law claims.

## Conclusion

For the reasons given above, defendant's motion to dismiss is denied with regard to plaintiff's federal law claims, and granted with regard to plaintiff's state law claims.

This opinion resolves the item listed as document number 22 in this case.

SO ORDERED.

Dated: New York, New York
      March 31, 2015

*[signature]*

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/15